## Stenporche et ux. v. Ivkovich et ux.

*Craig & Craig*, for plaintiffs.
*Rowley & Smith*, for defendants.

SOHN, J., February 24, 1947.—Peter Bila, the owner of property in Aliquippa, Pa., on December 20, 1944, leased the premises to George Ivkovich and Barbara

Ivkovich, for a term of one month. The term began January 1, 1945, and ended January 31, 1945. The lease contains a power of attorney authorizing the confession of judgment in ejectment in the event of the violation of any of the covenants or agreements of the lease.

The demised premises consist of an 11-room dwelling house. On or about January 1, 1945, defendants, George Ivkovich and Barbara Ivkovich entered into possession of the premises and have remained since that time. Defendants occupied the first floor and basement as living quarters, and rented the second and third floors to roomers.

Sometime in February, or early in March 1946, Peter Bila sold the premises to William Stenporche and Anna L. Stenporche. On March 4, 1946, Peter Bila and Katie Bila, his wife, assigned the lease, subject to the terms and conditions thereof, to William Stenporche and Anna L. Stenporche. William Stenporche and Anna L. Stenporche filed with the Office of Price Administration a certificate relating to eviction, alleging they desired to occupy the premises as their residence.

On March 28, 1946, the Office of Price Administration granted a certificate relating to eviction, and a copy of this certificate was mailed to and received by the tenants. The certificate authorized William Stenporche and Anna L. Stenporche to pursue their remedies for the removal or eviction of the tenants from the accommodations in accordance with the requirements of local law. The certificate provided that an action to remove or evict the tenants should not be commenced sooner than six months from March 15, 1946. The tenants thereafter continued to pay rent to Ruffner & Moore, agents, who acted for Bila, and after the sale of the property continued to collect rent for Mr. and Mrs. Stenporche.

On September 16, 1946, counsel for Mr. and Mrs. Stenporche, by a letter notified the defendants that

they had been directed to begin immediately, an eviction proceedings against the tenants, and if tenants did not remove from the premises at the expiration of 15 days, they would institute the eviction proceedings. On October 22, 1946, William Stenporche and Anna L. Stenporche caused a judgment in ejectment to be entered against George Ivkovich and Barbara Ivkovich, defendants, and a writ of habere facias possessionem was issued. It is alleged in the statement and confession that by its terms, the lease expired September 30, 1946, whereupon plaintiffs were entitled to possession of the premises without further notice from the lessor, and it is alleged that defendants failed, neglected, or refused to deliver possession of the aforesaid premises to the plaintiffs.

On November 8, 1946, defendants filed a petition for a rule to show cause why the judgment in ejectment should not be stricken from the record and for a rule upon plaintiffs to show cause why the judgment should not be opened and defendants permitted to make a defense thereto.

On November 14, 1946, plaintiffs filed an answer to the petition. Without reciting the averments in the petition and answer, the questions involved in this case have been set out in the plaintiffs' and defendants' briefs in substantially the same form. These questions are:

I. Was the action properly brought in the name of plaintiffs, assignees of the lease, rather than in the name of the assignor for the use of the assignees?

II. Should the judgment entered by confession be opened and the defendants permitted to make a defense?

III. It being admitted that no formal 30 days' notice was served on the tenants, was the tenancy lawfully terminated?

I. We are of the opinion that the action was properly brought in the name of plaintiffs, assignees of the lease rather than in the name of the assignors for the use of the assignees. Rule 2002 Pa. R. C. P. provides:

"(*a*) Except as otherwise provided in clauses (*b*), (*c*) and (*d*) of this rule, all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts." (Clauses (*b*), (*c*) and (*d*) do not apply to this case.)

The action in this case was instituted by William Stenporche and Anna L. Stenporche in their own names as plaintiffs. We think this procedure was in accord with the requirements of the rule. The statement shows that Peter Bila and wife conveyed the property to William Stenporche and Anna L. Stenporche. Attached to the confession of judgment is the original lease between Peter Bila, the former owner of the property, and George Ivkovich and Barbara Ivkovich, defendants. There appears on this lease an assignment of the lease by Peter Bila and Katy Bila to William Stenporche and Anna L. Stenporche, subject to the terms and conditions thereof. The Stenporches are the real parties in interest. At the time of the confession of judgment, the transferees held both a conveyance of the reversion and an assignment of the lessors' interest in the lease. The transferees are therefore proper parties plaintiff. Goodrich-Amram Pennsylvania Procedural Rules Service—Actions by Real Parties in Interest, §2002(*a*)-17.

In Market Street Trust Co., to use, v. Grove, 46 D. & C. 605, Judge Rupp held that the real party in interest was the proper party to enter judgment by confession. He said (p. 606):

"While prior to the promulgation of the rule under consideration it was the proper practice to institute an action or confess a judgment in the name of the

assignor to the use of the assignee, the assignor was in no sense a party to the action. The action could be instituted without the assignor's consent and he could not discontinue or disclaim the action brought by the assignee. Therefore, it readily can be seen that the assignee always has exercised the prerogatives of the real party in interest and has been recognized as such.

"The rule changed the above procedure by making it mandatory that judgment be confessed in the name of the assignee, the real party in interest.

"As stated in Section 2002(*a*)-19 of Goodrich-Amram's Procedural Rules Service, p. 30:

" 'Under Rule 2002(*a*), the assignee or present holder or bearer of the obligation, whether negotiable or not, is the real party in interest and the judgment must be confessed in his name alone . . .'."

In Hooper, to use, v. Ocker et ux., 50 D. & C. 390, the same conclusion was reached. In this case the court held (p. 395) :

"It is to be noted that this proceeding does not comply with Pa. R. C. P. 2002 which requires all actions to be prosecuted by and in the name of the real party in interest. C. N. Miller should have sued in his own name and not as use plaintiff."

Counsel for defendants points out that the paragraph in the lease authorizing confession of judgment, authorizes judgment "in favor of said lessor, his heirs, devisees, executors, administrators or assigns" and in the same sentence provides for confession of judgment in ejectment and the power therein contained is "forthwith against tenant and in favor of the lessor". It is contended that this is authority for the confession of two different kinds of judgments: one a money judgment, which may be confessed in favor of the lessor and his heirs, devisees, executors, administrators or assigns; the other in ejectment in favor of the lessor.

Prior to the adoption of Civil Procedure Rule 2002, this provision in the lease might have controlled. Since the adoption of this rule, the proper procedure is the entry of judgment in the name of the real party in interest. Our conclusion in this matter is in line with the other decisions of the common pleas courts to which we have referred. We do not believe the appellate courts have passed upon this question. We therefore hold that the entry of judgment in the name of the real party in interest was proper.

II. The second contention of defendants relates to the rule to show cause why the judgment confessed in ejectment should not be opened and defendants permitted to make a defense. Defendants allege that an oral agreement was made whereby it was agreed that plaintiffs would move into the rooms on the second and third floor of the house, and defendants would be permitted to occupy the remainder of the house until such a time as defendants could locate accommodations elsewhere. Depositions of the parties were taken and filed.

Barbara Ivkovich testified that defendants rented the premises, now owned by plaintiffs, from Peter Bila, who then owned the property. She said that after March 1946 they paid rent to Ruffner & Moore, agent for the Stenporches, who then owned the property. She said Mrs. Stenporche came to the premises on Wednesday, September 11, 1946, and at that time Mrs. Stenporche told her if she would get rid of the roomers, the Stenporches would move upstairs and the tenants could remain in the premises until they found a place to live. She said a room on the second floor had been equipped as a kitchen, in addition to which there were six other rooms and a bathroom on the second and third floors. She said there was a separate stairway to the second floor. She said at this time all the rooms on these floors were occupied by roomers. Mrs. Ivkovich said she told Mrs. Stenporche she would get rid of

the roomers and some of the roomers left in September, and all were gone by the first week of October. She said Mr. and Mrs. Bila sold the furniture in the rooms occupied by roomers and the furniture was removed by October 1st, and since then the rooms on the second and third floor were vacant. Mrs. Ivkovich said a few days after October 1st, Mr. Stenporche came to the house, asked her for the key to the front door, and he took and retained the key. She said Mr. Stenporche told her if his wife said the tenants could remain, it would be all right. She said shortly after October 1st, Ruffner & Moore, agent, refused to accept rent. Mrs. Ivkovich said her family did not use the bathroom on the second floor of the property. She said they received a letter from plaintiffs' lawyer, in which they were notified to move in 15 days.

George Ivkovich, the other defendant, testified that he was not at home on September 11, 1946, and did not talk with Mrs. Stenporche, nor was he at home when the key was delivered to Mrs. Stenporche. He testified that the second and third floors of the property were occupied by roomers, who left October 1st, and after that time the rooms on the second and third floor were vacant. He also described the second floor facilities, indicating one room was equipped as a kitchen. This briefly is a summary of the testimony offered on behalf of defendants, who petitioned to open the judgment.

Anna L. Stenporche, one of the plaintiffs, testified that before and after purchasing the house, she was in the house and inspected it. She said on September 11th, on advice of her attorney, she went to the property, inquired what defendants intended to do, and asked when they expected to move. She said Mrs. Ivkovich informed her they could not find a place. She denied that there was any suggestion about getting rid of the roomers; and she denied that there was any under-

standing about the Stenporches moving into part of the premises while the house was occupied by defendants. She said there was no discussion as to an adjustment of rent; that she had not heard this matter mentioned until the depositions were taken. Mrs. Stenporche said they received the rent for the month of September, but received nothing after that date. She said on September 15th they advised Ruffner & Moore to discontinue accepting the rent. She testified that she was there on a Sunday, and Mr. Ivkovich was not at home, and she denied that Mr. Ivkovich heard any statement about the tenants remaining in the property. Mrs. Stenporche said her husband had a key to the property, but she did not know when it was delivered to him.

William Stenporche, the other plaintiff, testified that he had not discussed the situation with Mr. Ivkovich. He said he had a key which he requested the tenants deliver to him. He said this key was delivered to him by Mrs. Ivkovich some time in October, but he did not remember the exact date. He said when the key was delivered there was no conversation between him and Mrs. Ivkovich. He said he asked Mrs. Ivkovich whether Mrs. Stenporche told her the Ivkovichs could remain and Mrs. Ivkovich replied that Mrs. Stenporche had so informed her. He said he gave no reply to this statement. He said he never discussed with Mrs. Ivkovich the matter of both families living in the house at the same time. He testified the last rent received was for the month of September; the key was delivered to him after October 1st, and that he never discussed rent with the tenants. He said he asked for the key because he wanted to repair the property, and wanted to arrange for a tinner to repair the roof and he wanted to arrange for admittance of a plasterer to the property. He said he had been in the second and third floor about October 3rd, and observed the condition of the plaster in the house.

The contradictory testimony in the depositions is the oaths of plaintiffs against the oaths of defendants. We are satisfied that the evidence is not sufficient to justify us in opening the judgment.

The delivery and acceptance of the key may have been a surrender of the second and third floors of the house. The issue in this case is as to the right of plaintiffs to immediate possession of the part of the house still occupied by defendants. A proceeding to open a judgment entered upon a warrant of attorney is an equitable proceeding, and a judgment should be opened in such proceeding only when the evidence is sufficient to satisfy the judge, sitting as a chancellor, that the reasons alleged for opening the judgment are reasonably established by the preponderance of the evidence. The determination of the question as to whether a judgment should be opened is within the discretion of the court, and the court may be satisfied that a judgment should not be opened even though on the face of the evidence there may appear to be a slight preponderance in favor of petitioner. In the instant case, however, we are satisfied that the evidence of oral permission to defendants to remain in the premises is not sufficiently definite and positive to justify the submission of an issue to a jury: (Jenkintown National Bank's Appeal, 124 Pa. 337; Rishel, etc., v. Crouse, 162 Pa. 3; Blauvelt v. Kemon, 196 Pa. 128; Cruzan v. Hutchison, 210 Pa. 88; Boyd v. Kirch, 234 Pa. 432; Tobacco Co. v. Paluszsy, 31 Pa. Superior Ct. 602; Dunbar v. Lutton, 72 Pa. Superior Ct. 77; Hotaling v. Fisher, 79 Pa. Superior Ct. 103; Schultz v. Rudman, 81 Pa. Superior Ct. 239). We therefore decline to make a rule absolute to open the judgment and submit to a jury the question as to an oral agreement permitting defendants to remain in the house until they could locate another house.

III. To determine the issue involved in the third question in this case, we must first consider the facts

applicable thereto. In the statement and confession, plaintiffs allege that on or about March 15, 1946, plaintiffs notified defendants, in writing, to vacate the premises, and at the same time notified the Office of Price Administration requesting authorization to proceed to recover possession of the premises. It is admitted that a certificate relating to eviction issued by the Office of Price Administration. In plaintiffs' answer to the petition for a rule to show cause why judgment should not be stricken from the record, or opened, plaintiffs admit that defendants were not given 30 days' notice in writing demanding possession of the premises. It is conceded that no 30 days or one-month notice was given before the end of the term. The lease was from month to month. Each month constituted a new term. Plaintiffs aver in the confession that the lease expired September 30, 1946, whereupon plaintiffs were entitled to receive possession of the premises without further notice from the lessor.

It is admitted that by letter dated September 16, 1946, defendants were advised that eviction proceedings would be brought against them within 15 days. Attached to the statement and confession is a copy of the certificate relating to eviction issued by the area rent director of the Office of Price Administration. This certificate authorizes plaintiffs to pursue their remedies for the removal or eviction of the tenants, but such action shall not be commenced sooner than six months from March 15, 1946. This certificate states "This certificate only authorizes an action to be brought for the eviction or removal of the tenant instituted in accordance with the requirements of local law, and does not pass upon the merits of such action under the law." This certificate was not a formal notice to surrender possession of the premises. It postponed the purchasers' remedy for failure of the tenants to vacate at the end of any one month term. Unless

the removal of the tenants is authorized under local law, the Office of Price Administration certificate could not amount to notice to vacate. The only other notice which defendants received was a letter dated September 16, 1946, advising the defendants that eviction proceedings would be instituted against them within 15 days.

We next consider whether notice that the plaintiffs demanded possession was necessary. The lease contains the following provision:

"The tenant expressly waives to the Lessor the benefit of the Acts of Assembly, approved March 31st, 1905, requiring thirty days' notice to vacate said premises at the end of the term, and also the twenty-first day of March, A. D. 1772, and the fourteenth day of December, 1863, requiring three months' notice to vacate the premises at the end of the term, January 31st, 1945, or at the end of any subsequent term for which this lease may be renewed, and covenants and agrees to give up quiet and peaceful possession without further notice from the said Lessor or Agent."

The lease contains the further provision:

"The tenant expressly waives to the Lessor the benefits of the Acts of Assembly, approved March 31st, 1905, requiring thirty days' notice to vacate said premises, and also the twenty-first day of March, A. D. 1772, and the fourteenth day of December, A. D. 1863, requiring three months' notice to vacate the premises and covenants and agrees to vacate the said premises at any time upon receiving thirty days' notice in writing so to do, in case of sale of said property."

It is also provided in the lease that

"If the Tenant lawfully occupies the premises after the end of the term, this lease and all of its terms, provisions, conditions, covenants, confession or confessions of judgment, waivers, remedies and any and all of Lessors' rights herein specially given and agreed to,

shall be in force for another month and so on from month to month, as long as the relation of Landlord and Tenant continues."

The lease specifically waives the requirement of notice under the Acts of 1830, 1863, 1772, and 1905. It will be observed, however, that each of these acts refers to a particular type of procedure to regain possession of demised premises. There is also a provision in the lease wherein the tenants agree to vacate the premises at any time upon receiving 30 days' notice in writing so to do in case of sale of said property. Under the lease, the tenancy for a period of one month was originally created with a clause in the lease providing that if the tenant lawfully occupied the premises after the end of the term, the lease and all its provisions and conditions should be in force for another month and so on from month to month. Plaintiffs accepted rent through their agent after they purchased the property so the tenancy continued after March 1946 as a tenancy from month to month.

The possessory proceedings in this case were by confession of judgment. The lease authorizes such proceedings "in case of violation of any of the covenants or agreements in this lease by Tenant". Defendants are charged with a violation of a covenant to deliver possession of the premises to the plaintiffs at the end of the term, or on September 30, 1946. The waivers contained in the lease do not apply to the procedure adopted in this case, and it would be necessary for the plaintiffs to give the required notice to obtain possession of the premises.

It is generally held that under a lease from month to month, the landlord who desires possession must serve a notice to quit 30 days before he is entitled to possession. It is also held that this notice must call for possession at the end of a monthly term at least 30 days after the notice is served. This rule was estab-

lished at common law and has been adopted in Pennsylvania: Hollis v. Burns, 100 Pa. 206. The tenant under a lease from month to month is not required to vacate at the end of the month unless he has received a month's notice from the landlord, and unless there is other provision in the lease, a full 30 days' notice must be given: Robinson v. Kuhen, 83 Pa. Superior Ct. 337. Where a lease is from month to month, it does not terminate by the mere lapse of time, and neither party can terminate it without notice to the other in advance for the time required by law. At common law and under statute a notice to quit is necessary to terminate a periodic tenancy such as those from year to year, or month to month.

In these proceedings, it is admitted that petitioners were not given 30 days' notice. The waivers contained in the lease in the instant case were as to the procedure provided in the acts of assembly referred to. The waiver of the rights under these statutes does not affect the rights of the parties in this case. It will be observed that in the event of sale of the property, the lease expressly required 30 days' notice in writing to terminate the tenancy. This provision read in connection with the requirement of the law that 30 days' notice is required to terminate the tenancy, clearly leads to the conclusion that 30 days' notice would be necessary to terminate the tenancy. No such notice was given in this case, prior to the confession of judgment, and we conclude the judgment was confessed without authority. The confession of judgment is based on a failure of the tenants to surrender possession at the end of the term. We have determined that the tenants were not required to surrender possession until 30 days' notice was given. The judgment entered by confession must therefore be stricken from the record.

## Order

And now, to wit, February 24, 1947, it is ordered, adjudged and decreed that the rule issued at the above number and term to show cause why the judgment should not be stricken from the record be made absolute, and the judgment of William Stenporche and Anna L. Stenporche v. George Ivkovich and Barbara Ivkovich, filed at no. 186, December term, 1946, D. S. B., be, and the same is hereby stricken from the record; costs to be paid by the plaintiffs.